**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOHN J. CARNEY, in his capacity as COURT-APPOINTED RECEIVER for HIGHVIEW POINT PARTNERS, LLC, et al.,<br>　　　Plaintiff,<br><br>　　　v.<br><br>MORIS BERACHA, et al.,<br>　　　Defendants. | No. 3:12-cv-00180 (SRU) |

## RULING ON MOTIONS TO DISMISS AND TO LIFT ANTI-SUIT INJUNCTION

This case is ancillary to a Securities and Exchange Commission ("SEC") enforcement proceeding against Francisco Illarramendi ("Illarramendi") for violation of federal securities laws. The United States District Court for the District of Connecticut created a receivership estate and appointed John J. Carney (the "Receiver") as receiver. In this action, the Receiver filed a complaint against defendants Moris Beracha ("Beracha") and several affiliated entities to recover property for distribution to Illarramendi's victims and creditors.

Fractal Fund Management, Ltd., Fractal P Holding, Ltd., Fractal L Holding, Ltd. (collectively, "Fractal"), Northwestern International, Ltd. ("Northwestern"), Rowberrow Trading Corp. ("Rowberrow"), Bradleyville, Ltd. ("Bradleyville"), and Beracha all move to dismiss the complaint for lack of personal jurisdiction, insufficient service of process, and/or improper venue. Defendants, not including Bradleyville, also move to lift the anti-suit injunction imposed on them.

For the reasons stated below, I deny defendants Beracha, Fractal, Northwestern, and Rowberrow's motion to dismiss for lack of personal jurisdiction, insufficient service of process,

improper venue, and for relief from the anti-suit injunction (doc. # 63) and deny without

prejudice defendant Bradleyville's motion to dismiss for lack of personal jurisdiction (doc. # 74).

## I.      Standard of Review

### A.   Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)

A plaintiff bears the burden of showing that the court has personal jurisdiction over each

defendant.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

Where, as here, there has been no discovery on jurisdictional issues and the court is relying

solely on the parties' pleadings and affidavits, the plaintiff need only make a prima facie

showing that the court possesses personal jurisdiction over the defendant.  *Bank Brussels*

*Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

### B.   Motion to Dismiss for Improper Venue under Rule 12(b)(3)

"The same standard of review is applied to a motion to dismiss for improper venue under

Fed. R. Civ. P. 12(b)(3) as is applied to dismissals for lack of personal jurisdiction pursuant to

Fed. R. Civ. P 12(b)(2)."  *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 362-63

(D. Conn. 2008) (citing *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005)).  In

defending against a motion to dismiss for improper venue, plaintiffs bear the burden of proving

that venue is proper.  *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D.

Conn. 2001).  When deciding a motion to dismiss for improper venue, courts may consider

materials outside the pleadings.  *See, e.g., New Moon Shipping Co., Ltd. v. Man B & W Diesel*

*AG*, 121 F.3d 24, 26 (2d Cir. 1997).  Pursuant to 28 U.S.C. § 1406(a), the court may transfer or

dismiss the case if venue is not proper.  Should the defendant prevail on its motion, the court still

retains discretion to decline to dismiss the case in favor of a transfer to any district where the

case could initially have been brought.  *See id.* (citing *Minnette v. Time Warner*, 997 F.2d 1023,

1026 (2d Cir. 1993)).

C. Motion to Dismiss for Insufficient Service of Process under Rule 12(b)(5)

"Under Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007) (citing Fed. R. Civ. P. 12(b)(6); *Greene v. Wright*, 389 F. Supp. 2d 416, 426 n.2 (D. Conn. 2005)). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Id.* (citing *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999)). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id.* (internal quotation marks omitted).

II. **Background**[1]

This action is an effort to recover approximately $170 million in transfers that defendants received from Illarramendi and receivership entities.[2]  The Receiver alleges that, for nearly five years, Beracha and his affiliates participated in numerous transactions with Illarramendi and the receivership entities.  Beracha and his affiliated entities served as Illarramendi's source of liquidity, which he needed to perpetuate his Ponzi scheme.  Beracha was intimately involved in Illarramendi's business operations and his support to Illaramendi came in various forms.  He raised money from investors to pour into Illarramendi's "investment vehicles" and would also

---

[1] All background information is taken from the First Amended Complaint, unless otherwise noted.  The allegations of the complaint are deemed to be true for purposes of the motions to dismiss.

[2] The receivership entities include: Special Opportunity Fund, Michael Kenwood Venezuela, Short Term Liquidity Fund, Michael Kenwood Consulting, LLC, Michael Kenwood Group, LLC, Michael Kenwood Capital Management, LLC, Michael Kenwood Asset Management, and Highview Point Partners, LLC.  *Id.* at ¶¶ 8-15.

pool money to be loaned to Illarramendi, often at exceedingly high interest rates, dictating the terms at which the receivership entities would be required to repay Beracha and his affiliates. He also introduced Illarramendi to Venezuelan officials and financiers and helped Illarramendi bribe at least one government official through the wiring of payments to certain defendant entities.

On March 7, 2011, the United States Attorney for the District of Connecticut filed an information against Illarramendi, alleging that he had engaged in a Ponzi scheme. Illarramendi pled guilty and acknowledged as part of that plea that he had engaged in a scheme to hide from investors losses of several hundred million dollars. On June 14, 2011, the SEC began a civil enforcement action against Illarramendi and others, alleging that they misappropriated investor assets in violation of securities laws. The SEC also sought an order freezing the assets of those defendants and the appointment of a Receiver over those assets. In 2011, U.S. District Judge Janet B. Arterton appointed John J. Carney as Receiver.

A.  The Defendants

1.  *Beracha*

Beracha is a Venezuelan national and a finance and management executive. He is one of the wealthiest people in Venezuela, owns homes in Venezuela, Florida, and New York City, and, according to Fractal Fund's marketing materials, he splits his time between Caracas and New York City. He regularly conducts business in Connecticut and elsewhere in the United States and has met with Illarramendi numerous times, including in Stamford, Connecticut, Miami, and New York City to discuss and execute the transactions and business dealings that are subject of the Receiver's complaint.

Beracha also controls or directs all of the entities named as defendants in this action, including Bradleyville and Northwestern. He treated those entities interchangeably and

exercised dominion and control over them.  The entities shared addresses, officers, directors, or points of contact and frequently received fraudulent transfers from Receivership entities for no value.  Beracha also acted as an agent for the entity defendants, negotiated transactions and entered into agreements on their behalf, and directed Illarramendi to make payments to them.

### 2. *Bradleyville*

Bradleyville is a former British Virgin Islands entity currently domiciled in Nevis. Beracha's business partner, Luis Otero ("Otero"), operates Bradleyville and was frequently involved in an operational or logistical capacity in the dealings between Beracha and Illarramendi.  Bradleyville owns an apartment in New York City, which Beracha formerly owned and sold to Bradleyville in 2007.  Beracha and Bradleyville used the same attorney on both sides of that real estate transaction.

### 3. *Northwestern*

Beracha is president of Northwestern, a British Virgin Islands entity.  Northwestern owns an apartment in New York in the same building where Bradleyville owns property and Beracha lives.  Northwestern used the same real estate attorney to purchase the unit as Beracha and Bradleyville used to purchase their unit.  Northwestern received payments from Illarramendi through two Panamanian companies and has also received payments on Beracha's behalf.

### 4. *Fractal and Rowberrow*

Fractal Fund Management, Ltd. ("Fractal Fund") is a British Virgin Islands entity that operates in Florida through its agent, Fractal Advisors.  Beracha advises Fractal Fund and has acted as its agent.  Fractal Fund used the Florida address and office of Fractal Advisors in connection with the transactions at issue in this case.  Fractal P Holding and Fractal L Holding are subsidiaries of Fractal Fund and regularly used Fractal Advisors as an agent in Florida.  *See,*

*e.g.*, New Decl., Exs. 15-16.  Fractal Fund filed claims with the Receiver, seeking funds
purportedly owed to Fractal P Holding and Fractal L Holding.  Rowberrow, which also filed a
claim with the Receiver, is a British Virgin Islands entity of which Beracha is a co-owner and
principal.

## III.    Discussion

The defendants have moved to dismiss for lack of personal jurisdiction and for *forum non
conveniens.*  On the jurisdictional motion, defendants argue that the federal receivership statute,
the sole basis pled in the complaint for personal jurisdiction, does not apply here because the
Receiver fails to allege that this action concerns receivership assets located in any judicial district
of the United States or that any defendant resides in any district where such assets are located.
Defendants also argue that the court does not have pendent personal jurisdiction with respect to
pendent state law claims because the defendants are not already properly before the court for a
federal claim.  Further, defendants argue that Connecticut's long-arm statute does not provide
grounds for personal jurisdiction.  Next, defendants argue that Venezuela is the more convenient
venue.  Defendants, not including Bradleyville, have also moved for relief from the anti-suit
injunction in order to allow them to bring lawsuits against the Receiver.

### A.   Whether this Court Can Exercise Personal Jurisdiction over Defendants

A plaintiff bears the burden of showing that the court has personal jurisdiction over each
defendant.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).
Where, as here, there has been no discovery on jurisdictional issues and the court is relying
solely on the parties' pleadings and affidavits, the plaintiff need only make a prima facie
showing that the court possesses personal jurisdiction over the defendant.[3]  *Bank Brussels*

_____

[3] Following jurisdictional discovery, however, the plaintiff's prima facie showing must

*Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  The court may

consider affidavits and other evidence submitted by the parties.  *Ensign-Bickford Co. v. ICI*

*Explosives USA Inc.*, 817 F. Supp. 1018, 1026 (D. Conn. 1993).  In resolving the personal

jurisdiction issue, a court must "construe the pleadings and affidavits in the light most favorable

to [the plaintiff], resolving all doubts in his favor."  *A.I. Trade Finance, Inc. v. Petra Bank*, 989

F.2d 76, 79-80 (2d Cir. 1993).

    B. <u>Fractal and Rowberrow Have Consented to this Court's Jurisdiction</u>

      Fractal Fund, Fractal P Holding, and Rowberrow have filed several motions and requests

with the court and appeared before the court several times in the action brought by the SEC.  *See*

*SEC v. Illarramendi*, 03:11-cv-00078-JBA ("SEC action").  On August 24, 2012, Fractal Fund,

Fractal P Holding, and Rowberrow moved to intervene in the SEC action before Judge Arterton,

seeking relief from the court.  Particularly, they sought to challenge a stipulation of settlement;

request the revocation of the Receiver's appointment; reject the Receiver's fee applications; lift

the anti-suit injunction in order to be able to file suit against the Receiver and receivership

entities; and obtain an order to show cause why the Receiver's appointment should not be

revoked.  Judge Arterton denied their motion to intervene and, in doing so, ruled that the court

had personal jurisdiction over them.  I agree.[4]  As a practical matter, the Fractal movants' and

Rowberrow's numerous filings, appearances, and arguments before the court are sufficient to

---

be factually supported by an averment of facts that would suffice to establish jurisdiction over
the defendant.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).  If,
at that point, disputed jurisdictional facts remain, the plaintiff bears the burden of proving
personal jurisdiction by a preponderance of the evidence either at an evidentiary hearing or trial.
*Id.*

    [4] Fractal L Holding, which did not independently file a claim with the Receiver or move
to intervene in the SEC action, is a subsidiary of Fractal Fund and Fractal Fund has acted as an
agent for Fractal L Holding.  Thus, insofar as this court has jurisdiction over Fractal Fund, it has
jurisidiction over Fractal L Holding.

give this court jurisdiction over them.  In any event, the Fractal movants and Rowberrow have

filed claims with the Receiver and, thus, have submitted to this court's jurisdiction.  *See*

*Alexander v. Hillman*, 296 U.S. 222, 241-42 (1935) (nonresidents who present claims against

receivers subject themselves to all consequences that attach to an appearance); *In re Enron*, 410

B.R. 374, 383 (S.D.N.Y. 2008) ("Once a party submits to the jurisdiction of the bankruptcy court

by making a claim, the party submits to the jurisdiction of the Court to establish the respective

rights of the parties.").  Further, as Judge Arterton held, defendants' arguments that this court

does not possess personal jurisdiction over them are misplaced because "by moving to intervene

in [the SEC] action, [they are] subject to the court's jurisdiction."  *See SEC v. Illarramendi*, 2012

WL 5832330, at *3 (D. Conn. Nov. 16, 2012) (citing *County Sec. Agency v. Ohio Dept. of

Commerce*, 296 F.3d 477 (6th Cir. 2002); *John v. Sotheby's Inc.*, 141 F.R.D. 29, 37 (S.D.N.Y.

1992)).

C.  <u>Whether this Court Can Exercise Personal Jurisdiction over Defendants under the Federal
Receivership Statutes</u>

The Receiver asserts that this court has personal jurisdiction over defendants pursuant to

28 U.S.C. §§ 754 and 1692.  Defendants argue that the federal receivership statute does not apply

and, therefore, the Receiver cannot establish a *prima facie* case of personal jurisdiction over the

defendants.

The federal receivership statute provides that:

A receiver appointed in any civil action or proceeding involving property, real,
personal or mixed, situated in different districts shall, upon giving bond as
required by the court, be vested with complete jurisdiction and control of all such
property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment, and
may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754.  The statute also provides that:

In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

*Id.* at § 1692.

Beracha argues that the Receiver has failed to satisfy the statute's requirements because: (1) the Receiver was not required to and has not posted bond, (2) the anti-suit injunction eliminates his right to sue under section 959, and (3) the complaint does not identify receivership property located in any judicial district.

The first two alleged inadequacies are easily dismissed.  The "bonding requirement" in section 754 ("upon giving bond as required by the court") gives the appointing court discretion to require a receiver to post a bond.  The statute does not require a receiver to post bond unless "required by the court."  Here, the court has not required a bond, so the failure to post bond does not deprive the Receiver of his statutory authority.  Moreover, the anti-suit injunction is plainly permissible under the federal receivership statutes.  *See SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("An anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership.").  The last alleged inadequacy raises the gravamen of Beracha's motion, which concerns the territorial extent and nature of the court's jurisdiction.

Beracha's objection to the federal receivership statute as the basis of personal jurisdiction has two parts.  First, he argues that the statute does not confer personal jurisdiction on the court because the Receiver has failed to allege in the complaint specific receivership property or assets

he believes to be located in the judicial districts where this court would exercise jurisdiction. Second, he argues that the court cannot use *in rem* jurisdiction provided under the federal receivership statute to exercise *in personam* jurisdiction.

The circuit courts that have addressed the second argument have uniformly rejected it. *See Haile v. Henderson Nat'l Bank,* 657 F.2d 816, 826 (6th Cir. 1981); *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 290-91 (D.C. Cir. 1996); *SEC v. Bilzerian*, 378 F.3d 1100, 1104-05 (D.C. Cir. 2004).[5]  In *Bilzerian*, the D.C. Circuit outlined the "interplay" between Rule 4(k) and 28 U.S.C. §§ 754 and 1692.  378 F.3d at 1103-06.  Following the Circuit's reasoning in *Vision Communications*, the Court described how establishing personal jurisdiction in a SEC enforcement action is a three-step process. 74 F.3d at 290-91.  "Step one involves [Rule 4(k)(1)(D)], which provides that '[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant . . . when authorized by a statute of the United States."[6] *Bilzerian*, 378 F.3d at 1103.  Step two requires a statute authorizing service of the defendant outside the relevant court, such as 28 U.S.C. § 1692.  *Id.*  Step three, the invocation of section 1692, requires that a receiver comply with section 754's filing requirements.  *Id.*

---

[5] Beracha asks this court to reject the decisions *Haile* and its progeny and accept the analysis found in an unpublished opinion from the Southern District of New York.  In *Bombardier Trust*, the court held that, because defendants were served with the summons and complaint outside the United States and sections 754 and 1692 provide only for "national, not international, service of process" and because the pleadings failed to allege that defendants were "present or ha[d] property of the receivership estate in any of the [] judicial districts in which the Receiver filed copies of the complaint and order of appointment," the court lacked personal jurisdiction.  *Steinberg v. Bombardier Trust,* 2008 WL 2787720, at *3 (S.D.N.Y. July 9, 2008).  That case is distinguishable on at least two grounds.  In *Bombardier Trust*, the defendant over which the receiver sought jurisdiction was never present in the New York and was not served in the United States.  Here, the Receiver has alleged that Beracha owns homes in New York and regularly conducts business in New York, and process was served on him in New York.

[6] The 2007 Amendment to the Federal Rules of Civil Procedure deleted as redundant former Rule 4(k)(1)(C), which described service on interpleader claimants.  Hence, the former Rule 4(k)(1)(D) addressed in *Bilzerian* is now denoted as Rule 4(k)(1)(C).

Section 754 is "a stepping stone on the court's way to exercising *in personam* jurisdiction." *SEC v. Vision Commc'ns*, *Inc.*, 74 F.3d at 290.  Thus, service of summons on a defendant in a judicial district establishes the court's jurisdiction pursuant to section 1692 if the Receiver has complied with section 754's filing requirement.

The Receiver timely filed copies of the SEC complaint against Illarramendi and the order of appointment in the Southern and Eastern Districts of New York, and the Northern, Middle, and Southern Districts of Florida, among other places.  In his filings, the Receiver did not specifically allege that receivership property was located in New York or Florida.  The Receiver argues that the failure to specifically identify receivership assets in the required filings is not fatal to jurisdiction under the receivership statute.  Rather, he argues, filing the receivership appointment order and service of summons on a defendant in a judicial district where receivership property is believed to be located is sufficient to confer personal jurisdiction.[7]  The amended complaint states that Beracha has owned property in New York, maintained a residence in New York City, Am. Compl. at ¶ 22, and hosted meetings at his home in New York that gave rise to the Receiver's claims, *see* New Decl., Exs. 3-4.  Fractal Fund's marketing materials acknowledge that "Mr. Beracha splits his time between Caracas and New York."  *See* New Decl., Ex. 6.  Beracha argues that the allegation that he owns homes in New York is insufficient to establish *prima facie* that receivership assets are located in New York.  Thus, he contends, the

---

[7] The Receiver also argues that long-arm statutes of the state where property is believed to be located can confer personal jurisdiction under the federal receivership statute, and he has cited three cases in which a district court held exactly that. *See Steinberg v. A Analyst Ltd.*, 04-60898-CIV, 2009 WL 806780 (S.D. Fla. Mar. 26, 2009); *Steinberg v. Barclay's Nominees (Branches) Ltd.*, 04-60897-CIV (S.D. Fla. Sept. 30, 2008); *Steinberg v. Alpha Fifth Group*, 04-60899-CIV, 2008 WL 906270 (S.D. Fla. Mar. 31, 2008).  I do not reach the question whether the Receiver can use New York or Florida's long-arm statute to establish personal jurisdiction because the movants here are, or may become, subject to this court's jurisdiction on other grounds.

Receiver has not complied with section 754, which requires that that the receiver file the appointment order and complaint in districts where receivership property is located.

The Receiver concedes that the complaint does not allege that receivership property is located in New York but argues that, to comply with section 754, he need only believe that receivership property is located in the judicial district where he files the required documents. The Receiver's position is consistent with the leading circuit court cases on this issue. *See Haile,* 657 F.2d at 823 ("[B]y statute, the territorial jurisdiction of the appointing court is extended to any district of the United States where property *believed* to be that of the receivership estate is found. . . .") (emphasis added); *see also Bilzerian*, 378 F.3d at 1104 (same). Further, defendants have pointed to no statute or case law supporting the proposition that the Receiver must specifically identify the location of receivership property in the required filings.[8] In any event, at oral argument, the Receiver noted that there are bank accounts in the Southern District of New York that contain receivership property and several documents in the public record also describe receivership property the Receiver believes to be in New York. Mot. to Dismiss Hr'g Tr. 57, Nov. 20, 2012. Accordingly, the Receiver has complied with section 754's filing requirements. Unless Beracha was improperly served, which he was not, *see infra*, he is subject to this court's jurisdiction.

D.  Service of Process

1. *Beracha*

Beracha moves to dismiss the Receiver's complaint, in part, under Rule 12(b)(5) of the Federal Rules of Civil Procedure, arguing improper service of process. Beracha argues that all attempts to serve the complaint are legally insufficient because the complaint relies solely on the

---

[8] This is hardly surprising. The facts giving rise to the existence of personal jurisdiction

inapplicable federal receivership statute and that he, as a citizen and resident of Venezuela not living in the United States, could only be served under Rule 4(f), under the Hague Convention, the Interamerican Convention, or in accordance with an order of the court.[9]

Beracha's assertion that he was not properly served is unavailing.  First, the federal receivership statute applies.  Second, Rule 4(f) does not apply to a defendant subject to jurisdiction based on his presence in the United States.  In such a case, Rule 4(e) applies.  Under Rule 4(e), an individual may be served in a United States judicial district by following state law for serving a summons in the state where the district court is located or service is made, or by delivering a copy of the summons and complaint personally, leaving copies at the individual's dwelling or usual place of abode with someone who can lawfully take service, or delivering a copy to an authorized agent.  Fed. R. Civ. P. 4(e).  Beracha was served through the concierge at Beracha's New York City residence on February 22, 2012, pursuant to Rule 4(e)(2)(B).

---

over a defendant generally need not be alleged in the complaint.  *See supra*, at 6.

[9] Under Rule 4(f), which provides for service of an individual in a foreign country, service may be effected:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

>> (C) unless prohibited by the foreign country's law, by:

>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

> (3) by other means not prohibited by international agreement, as the court orders.

2. *Bradleyville*

Bradleyville also argues insufficient service of process.  The Receiver served

Bradleyville in the British Virgin Islands by serving copies of the summons and complaint on

Commonwealth Trust Limited ("Commonwealth"), Bradleyville's former registered agent in the

British Virgin Islands.  A Commonwealth employee initially accepted service of the documents

on Bradleyville's behalf and signed an acknowledgment of service, but Commonwealth promptly

repudiated its acceptance and informed the Receiver that it was not authorized to accept service

on behalf of Bradleyville.  *Id.*  Bradleyville argues that service was insufficient because

Bradleyville ceased to be registered with the Office of the Registrar of Companies in the British

Virgin Islands and terminated its agency relationship with Commonwealth prior to service on

Commonwealth.

The Receiver and defendants dispute whether service was valid under British Virgin

Islands law.  The parties focus their dispute on the following excerpt of the applicable British

Virgin Islands law:

> Where a company is continued under the laws of a jurisdiction outside the Virgin Islands
>
> (a) the company continues to be liable for all of its claims, debts, liabilities and obligations that existed prior to its continuation as a company under the laws of the jurisdiction outside the Virgin Islands; . . . (d) service of process may continue to be effected on the registered agent of the company in the Virgin Islands. . . .

British Virgin Islands Business Companies Act § 184(5).

Bradleyville and the Receiver contest the meaning of this provision.  Bradleyville argues

that this language "indicates that a former [British Virgin Islands]-domiciled company **may**

choose to keep its contractual relationship with its [British Virgin Islands] registered agent, or

**may** choose, as Bradleyville did, to sever this relationship and require that all process be served upon its new registered agent in its new domicile."  Bradleyville Br. at 15 (emphasis in original). The Receiver argues that service may still be effected in the British Virgin Islands even if Bradleyville has moved to Nevis and severed its ties to the Virgin Islands.

Resolution of the seeming ambiguity in the quoted language requires examination of Parts X and XI of the British Virgin Islands Business Companies Act ("the Act").  Part X of the Act concerns, in pertinent part, the "continuation" of a company incorporated under the Act to do business as a British Virgin Islands company after it has moved its domicile out of the British Virgin Islands.  Section 180(1) of the Act provides that "a foreign company may continue as a company incorporated under this Act" if it satisfies certain requirements and if the laws of its place of its incorporation permit it to do so.  "When a foreign company is continued under this Act, . . . the company is no longer to be treated as a company incorporated under the laws of a jurisdiction outside the Virgin Islands."  Act § 183(1)(c).  The Registrar decides whether the requirements for continuation under the Act have been satisfied.  *Id.* § 184(4).  A company registered under the Act "shall at all times have a registered agent in the Virgin Islands."  *Id.* § 91(1).  Finally, the Act provides that a company "continued under the laws of a jurisdiction outside the Virgin Islands" remains liable for its pre-existing debts and can be served through its registered agent.  *Id.* § 184(5).  Part XI of the Act governs foreign companies.  To carry on business in the Virgin Islands, a foreign company must be registered under Part XI.  *Id.* § 186. An application for registration by a foreign company must include the name of the company's Virgin Islands registered agent.  *Id.* § 186(2)(d).  Any change in the registered agent for a foreign company must be formally filed within one month of the change.  *Id.* § 188(1)(e).  Thus, the Act requires every foreign company doing business in the Virgin Islands, either through the

continuance or foreign company registration provisions, to maintain a registered agent in the Virgin Islands.

None of these provisions, however, speaks to the status of a company that moves its domicile out of the British Virgin Islands and does not continue to do business there.  The Receiver has not shown that Bradleyville was granted continuance status under the Act or that it otherwise did business in the Virgin Islands after changing its domicile, so I cannot conclude that the provisions of the Act reached Bradleyville at the time its former registered agent was served with process in this action.  The Receiver does not – and could not successfully – argue that it could effect service by serving Bradleyville's former agent for service of process.  The Receiver has filed a declaration that includes a letter from Commonwealth claiming that it ended its relationship with Bradleyville in 2010; the Receiver has not provided any evidence that Commonwealth or anyone else served as Bradleyville's agent for service of process in the British Virgin Islands at the time of service.  Bradleyville has filed a declaration that includes certificates of incorporation under the law of the Island of Nevis.  The burden of proving effective service of process rests on the Receiver and, based on the evidence before me, the Receiver has not met this burden with respect to service of Bradleyville in the British Virgin Islands.

Still, I will not yet dismiss the complaint against Bradleyville for ineffective service of process.  Rather than dismissing the complaint against Bradleyville, I will extend the time for the Receiver to serve Bradleyville because there is no time limit on serving process on foreign defendants.  *See* Fed. R. Civ. P. 4(m).  The Receiver shall serve Bradleyville and return proof of service to the court within 60 days of this ruling.  Bradleyville will suffer no prejudice from this extension—it is clearly on notice of the Receiver's claims—and the Receiver can cure

ineffective service simply by serving Bradleyville's registered agent in Nevis.  The delay of Bradleyville's receipt of effective service was caused principally by the court's lack of alacrity in deciding this motion.

E.  Whether Bradleyville and Northwestern Are Alter Egos of Beracha

The Receiver argues that an alter ego relationship exists between Beracha and all entity defendants and, therefore, the court has personal jurisdiction over all defendants to the extent it has jurisdiction over Beracha.[10]  Defendants argue that the Receiver has not established that the entity defendants are Beracha's alter egos and moves to dismiss the complaint for all parties to the extent that they are alleged to be alter egos of any defendant.[11]

Here, the Receiver argues that Bradleyville and Northwestern are subject to personal jurisdiction because they are the alter egos of Beracha, over whom the court has personal jurisdiction.  Because, at this stage of the proceedings, the Receiver need only make out a prima facie case of personal jurisdiction, he need only make out a prima facie case of the identity rule in order to survive a motion to dismiss for lack of personal jurisdiction made by Beracha's alter

---

[10] The Receiver's argument is actually broader; he asserts that, so long as there is personal jurisdiction over Beracha, personal jurisdiction also exists over any entity whose corporate veil can be pierced to reach Beracha.  It is not apparent to me that the Receiver is correct.  Connecticut recognizes two theories for veil piercing:  the instrumentality rule and the identity rule.  In short, the instrumentality rule turns on complete control that is used to commit a wrong, while the identity rule turns on an absence of corporate independence such that two actors are really one, that is, they are alter egos of each other.  By serving Beracha, the Receiver has not necessarily obtained personal jurisdiction over all entities that he controls (though the converse might well be true), but the Receiver has obtained personal jurisdiction over an entity that really is Beracha in all but name.  Without deciding whether the instrumentality rule can be used to obtain personal jurisdiction over the dominated entity, I will rely only on the identity or alter ego theory of veil piercing to support personal jurisdiction over the corporate defendants here.

[11] Before the court on these motions to dismiss for lack of personal jurisdiction are the Receiver's allegations as they relate only to the remaining movants, Bradleyville and Northwestern; thus, I will not address whether all of the entity defendants are Beracha's alter egos.

egos.[12]  *See S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138-39 (2d Cir. 2010);

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F.2d 131, 142 (2d Cir.

1991).

The Receiver has alleged that Beracha "ignored corporate formalities," Am. Compl. at ¶

4, and "treated the Entity Defendants interchangeably," *id.* at ¶ 24.  He also alleges that "many of

these entities share addresses, officers, directors, or points of contact" and "frequently received

fraudulent transfers from Receivership Entities for no value . . . or any other significant reason at

the direction of Beracha."  *Id.* at ¶ 24.  The complaint alleges transactions in which Beracha and

Bradleyville appear to have operated interchangeably.  In one transaction, a receivership entity

transferred money to Bradleyville for Beracha's benefit in a deal in which Beracha was not a

party.  Am. Compl. ¶¶ 105-12.  Bradleyville also received money, ultimately intended for

Beracha, from a receivership entity, Am. Compl. ¶¶ 142-44, and made payments to another

receivership entity in a transaction in which it was not a party.  In another transaction,

Bradleyeville received payments on promissory notes, where it was not a party.  Am. Compl. ¶¶

127-32.  Such mixing of monies supports the alleged identity between Beracha and Bradleyville.

The complaint alleges that Beracha is president of Northwestern and that the email

addresses associated with Northwestern are actually Beracha's.  *Id.* at ¶ 41.  At oral argument,

the Receiver described Northwestern as "serving the function of being where Beracha puts his

money when he gets a fee from Illarramendi."  Mot. Hr'g Tr. 63:11-13, Nov. 20, 2012.  The

---

[12] This discussion assumes that the Receiver will make effective service of process on
Bradleyville.  Service of process and personal jurisdiction, though related, are distinct issues.
*Davis v. Mara*, 587 F. Supp. 2d 422, 424-25 (D. Conn. 2008).  Although the Receiver has made a
prima facie case for personal jurisdiction, I cannot exercise personal jurisdiction over
Bradleyville until the Receiver effects service of process.  If he does not do so, then Bradleyville
has not been brought within the jurisdiction of this court and the complaint against Bradleyville
will be dismissed.

complaint describes transactions in which Northwestern received payments on Beracha's behalf. *Id.* at ¶¶ 94-95, 102, 114-15, 143-44.  Northwestern also received payments from Illarramendi through two Panamanian companies.  *Id.* at ¶¶ 80, 86, 95, 144.  Northwestern, even though it had provided no services in exchange, received money that was intended to ultimately benefit Beracha. Am. Compl. ¶¶ 142-44.  Again, these facts support the alleged identity between Beracha and Northwestern.

Thus, because the Receiver has set forth a prima facie case that they are alter egos of Beracha, pending jurisdictional discovery and further motion practice, the court may exercise personal jurisdiction over Northwestern and over Bradleyville, once it has been properly served.

F.  <u>Improper Venue</u>

Defendants also move to dismiss based on forum selection clauses contained in contracts related to certain transactions in the Receiver's complaint and on the grounds of *forum non conveniens*.[13]

1.  *Forum selection clauses*

Defendants argue that dispute resolution clauses in contracts underlying certain challenged transactions exclude Connecticut as a forum.  Although defendants concede that they do not have all of the contracts incorporated by reference in the complaint, they nevertheless argue that the court should dismiss all of the Receiver's claims unless he produces each of the agreements on which he bases his allegations and presents those that do not exclude Connecticut.

Although there is a presumption that forum selection clauses are valid and should be enforced, that presumption is overcome if it can be shown that enforcement of the forum selection clause would be unreasonable.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10

_____

[13] Bradleyville does not oppose the Receiver's choice of forum under the forum selection

(1972).  Furthermore, in order for a forum selection clause to be sufficient grounds to grant a

motion to dismiss, it must be mandatory and cover all claims involved in the dispute.  *See Philips*

*v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  Although defendants' motion to dismiss

relies upon forum selection clauses that exclude Connecticut in seven out of twenty transactions

at issue, not all of the forum selection clauses are mandatory, and the mandatory forum selection

clauses, in some instances, relate only to portions of each transaction.  *See* Beracha Br. at 40-42.

Under these circumstances, enforcement of the forum selection clauses to bar this action from

this court would be unreasonable, because it would require piecemeal litigation in multiple fora

and, in some cases, might require multiple courts to adjudicate claims covering only portions of

each transaction.  Accordingly, I deny defendants' motion to dismiss on the grounds of the forum

selection clauses.

　　　　2.  *Forum non conveniens*

　　　　A district court may dismiss an action under the doctrine of *forum non conveniens* when

it appears that a foreign forum would be more convenient, fair, or sparing of judicial resources.

*See Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007).  To determine

whether *forum non conveniens* dismissal is appropriate, the court must apply a three-step inquiry.

*See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). "First, the

court must determine the degree of deference properly accorded the plaintiff's choice of forum."

*Overseas Media, Inc. v. Skvortsov*, 277 F. App'x 92, 96 (2d Cir. 2008) (internal quotations

omitted). Second, the court must determine if there is an adequate alternative forum.  *Id.*  Third,

if an adequate alternative forum exists, then the court must weigh the relative convenience of

each forum by evaluating certain private and public interest factors and determining if they

---

clause doctrine.

weigh in favor of dismissal. *Id*.  "The *forum non conveniens* determination is committed to the sound discretion of the trial court," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981), and the defendant seeking dismissal bears the burden of demonstrating that the forum is not convenient.  *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 74 (2d Cir. 1998).

### a.  Deference to the Receiver's Choice of Forum

Defendants bear the burden of overcoming the Receiver's choice of forum.  *See Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).  Plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in plaintiff's home forum.  *Id*. Here, the Receiver has brought suit in Connecticut and there is nothing to suggest improper motive and no reason to doubt the presumption of convenience entitled to a plaintiff's choice of forum, *see id.* at 73.  Moreover, the Receiver was appointed by this Court.  Thus, the Receiver's choice of a Connecticut forum is entitled to substantial deference.

### b.  Adequacy of the Alternative Forum

Although the Receiver's choice of forum is entitled to substantial deference, "that [conclusion will] not necessarily preclude *forum non conveniens* dismissal."  *Norex*, 416 F.3d at 157.  Dismissal may be appropriate if the movant can show that there is an adequate alternative forum and that the balance of private and public interests weights in its favor.  *Id.*  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).  Defendants state that they are amenable to suit in Venezuela and that equivalent causes action could be brought under Venezuelan law.  Thus, Venezuela may be an adequate forum.

c.  Balance of Private and Public Interests

Ultimately, the court must weigh private and public interests and decide, in its discretion, whether to dismiss on these grounds.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  "If the balance of conveniences suggests that trial in the chosen court will be unnecessarily burdensome for the defendant or the court, dismissal is proper."  *Piper Aircraft*, 454 U.S. at 256 n.23.  Private factors to consider here include the cost and efficiency of discovery, obtaining and calling witnesses, "and all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *See Schmerzler v. Intercontinental Hotels Group Res.*, Inc., 3:11-CV-120 CFD, 2011 WL 3652174 (D. Conn. Aug. 18, 2011) (citing *Gulf Oil Corp.*, 330 U.S. at 508; and *Pollux*, 329 F.3d at 75).  Defendants argue that Venezuela is more convenient on these factors.  Defendants also argue that the District of Connecticut is an improper venue because defending themselves against the Receiver's claims could require the testimony of Venezuelan witnesses, who may only be deposed before a Venezuelan judge and cannot be compelled to appear in Connecticut for trial.

The public interest factors to consider include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having the trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; (5) and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) (citing *Piper Aircraft*, 454 U.S. at 241).  Venezuela, as defendants argue, has an interest in these controversies and a Venezuelan court may be more familiar with certain aspects of the case.  Nonetheless, there are legitimate and substantial reasons for the Receiver to choose to bring litigation in this court.  This case is part of a set of interconnected actions brought in the District of Connecticut to recover moneys

resulting from a scheme that was carried out in great part in Connecticut.  Second, removal of this ancillary proceeding to a foreign jurisdiction while the primary actions are before the court in Connecticut would unnecessarily complicate matters and increase costs for the Receiver and the Receivership estate, and, possibly, the defendants, in litigating these matters.  It could also lead to inconsistent outcomes.  Even if Venezuela is an adequate forum in which to litigate this dispute, defendants have not overcome their burden to show that the balance of interests weighs in favor of Venezuela or that the Receiver's choice of forum should not be given substantial deference.  Thus, I deny defendant's motion to dismiss based on *forum non conveniens*.

G. Modification of the Anti-Suit Injunction

Beracha and Northwestern seek a modification of the anti-suit injunction on the basis of sections 754 and 959 of the federal receivership statute, arguing that a party not subject to the court's personal jurisdiction cannot be enjoined from suing a receiver in any foreign jurisdiction.

The receivership statute provides, in relevant part, that

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a).  Thus, the federal receivership statute subjects any suits brought against the receiver to the general equity power of the court.  In this case, the Amended Order Appointing Receiver, *SEC v. Illarramendi*, 03:11-cv-00078-JBA, doc. #423, allows for lawsuits against the Receiver and his professionals that are based on alleged "malfeasance, bad faith, gross negligence, or . . . reckless disregard of their duties."  New Decl., Ex. 5.

On November 16, 2012, Judge Arterton denied Fractal Fund's, Fractal P Holdings', and Rowberrow's motion to lift the anti-suit injunction. *SEC v. Illarramendi*, 2012 WL 5832330, at

*3 (D. Conn. Nov. 16, 2012).  She correctly observed that an anti-suit injunction is "a valid exercise of a district court's equitable powers," and that modification of a litigation stay is subject to a three-part test first set forth in *SEC v. Wenke*, 742 F.3d 1230 (9th Cir. 1984).  *SEC v. Illarramendi*, 2012 WL 5832330, at *3 (citing *SEC v. Byers*, 592 F. Supp. 2d 532, 536-37 (S.D.N.Y.), *aff'd*, 609 F.3d 87, 91-92 (2d Cir. 2008)).  To determine whether, in a receivership context, an injunction against litigation should be lifted, the movant must show: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim. *SEC v. Byers*, 592 F. Supp. 2d at 536-37.  As was the case in their motion before Judge Arterton, the defendants here have failed to address *Wencke* or to satisfy its three-part test.  Accordingly, I deny Beracha and Northwestern's motion for relief from the anti-suit injunction.

## V.      Conclusion

For the reasons stated above, defendants Beracha, Fractal, Northwestern, and Rowberrow's motion to dismiss for lack of personal jurisdiction, insufficient service of process, improper venue, and for relief from the anti-suit injunction (doc. # 63) is denied.  Defendant Bradleyville's motion to dismiss for lack of personal jurisdiction (doc. # 74) is denied without prejudice.  The Receiver shall serve Bradleyville and return proof of service to the court within 60 days of this ruling.  In the event that Receiver does not effect service of process on Bradleyville within 60 days of this ruling, the Receiver's complaint against Bradleyville will be dismissed.

It is so ordered.

- 24 -

Dated at Bridgeport, Connecticut, this 10th day of February 2014.


                                        /s/Stefan R. Underhill
                                        Stefan R. Underhill
                                        United States District Judge